UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DAVID R. DOVER,<br><br>    Plaintiff<br><br>v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>    Defendant.<br>_____/ | Civil Action No.: 20-11883<br>Honorable Gershwin A. Drain<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 11, 13]**

Plaintiff David R. Dover appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 13] be **GRANTED**;
- Dover's motion [ECF No. 11] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Dover's Background and Disability Applications

Born in July 1965, Dover was 48 years old at the time of his alleged onset date of December 31, 2013. ECF No. 9, PageID.69. Dover had previous work as a truck driver/switcher, garbage collector/driver, tractor trailer driver, and hostler/switcher. *Id.*, PageID.68. He claimed to be disabled from low back pain, hip pain, bipolar disorder, depression, and chronic obstructive pulmonary disease (COPD). *Id.*, PageID.168.

After the Commissioner denied his disability application initially, Dover requested a hearing, which took place in November 2016. *Id.*, PageID.113-165. In a February 2017 decision, the ALJ found Dover not disabled. *Id.*, PageID.204-221. The Appeals Council remanded the case to the ALJ to reassess Dover's RFC, which conflicted with the credited opinion of consulting expert, Harold Nims, D.O., without adequate rationale. *Id.*, PageID.229. On remand, and after another hearing, the ALJ again found Dover not disabled. *Id.*, PageID.77-112, 50-70. The Appeals Council denied review and the ALJ's decision on remand became the final

decision of the Commissioner. *Id.*, PageID.36-38. Dover timely filed for judicial review. ECF No. 1.

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[1] *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

3

(RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id*. At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id*. The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Dover was not disabled. At the first step, the ALJ found that Dover had not engaged in substantial gainful activity since December 31, 2013. ECF No. 9, PageID.53. At the second step, the ALJ found that Dover had the severe impairments of ischemic heart disease, cardiomyopathy, peripheral vascular disease status post femoral to femoral bypass graft, hypertension, spine disorders, and bipolar disorder. *Id*. The ALJ determined that Dover's COPD, left shoulder lipoma, gastroesophageal reflux disease (GERD), hypertension, and obesity were non-severe impairments. *Id.* Next, the ALJ concluded that none of Dover's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.,* PageID.54-57.

Between the third and fourth steps, the ALJ found that Dover had the

RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can occasionally perform postural activities . . . . [H]e can never climb ladders, ropes, or scaffolds. He can never balance or crawl. He can stand two hours, walk two hours and sit for four hours in and 8-hour workday. He requires the ability to stand for 10 minutes after 20 minutes of sitting as needed. He can never reach overhead with bilateral upper extremities and can frequently reach in all other directions with the bilateral upper extremities. He can frequently operate foot controls with bilateral lower extremities. He can have no exposure to extreme heat or cold or unprotected heights. He can have occasional exposure to humidity, wetness, and atmospheric conditions. Work is limited to simple, routine, repetitive tasks. He can have occasional contact with supervisors, coworkers, and the public. He must elevate his legs 12-16 inches, one at a time off the floor while at workstation. He requires the use of a handheld assistive device for ambulation.

*Id.*, PageID.57-58. At step four, the ALJ found that Dover could not perform his past relevant work. *Id.*, PageID.68. At the final step, after considering Dover's age, education, work experience, RFC, and the testimony of the VE, the ALJ also concluded that Dover could perform jobs that existed in significant numbers in the national economy, including visual inspector, packer, and small products assembler. *Id.*, PageID.69. The ALJ thus concluded Dover was not disabled. *Id.*, PageID.70.

## II. ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Dover argues that the ALJ erred by not adopting limitations assessed by the consultative examiner, Harold Nims. D.O., and improperly evaluating the opinions of treating physicians, Michael Merkler, M.D. and Theodore Schreiber, M.D. The Court finds Dover's arguments unavailing and that the ALJ's decision should be affirmed.

**B.**

Dover argues that the ALJ erred by failing to adopt some limitations assessed by the consultative examiner despite affording his opinion significant weight. He specifically challenges the ALJ's failure to incorporate Dr. Nims's restrictions to frequent pushing and pulling, occasional stooping, and walking only 10 minutes at a time. ECF No. 9, PageID.1209. But an ALJ need not adopt all the restrictions from an examining physician, even if he gave the physician's opinion great weight. *Price v. Comm'r of Soc. Sec.*, 2016 WL 3193025, at *2 (E.D. Mich. June 9, 2016). The ALJ was not required to explain limitations suggested by Dr. Nims but that he omitted from the RFC. *Smith v. Comm'r of Soc. Sec.*, 2013 WL 1150133, at *11 (N.D.Ohio March 19, 2013).

And the ALJ did account for the walking restrictions he included in the RFC. He noted Dover's mild limitations in lumbar range of motion and evidence of peripheral arterial disease in the lower extremities, with cyanosis in all of his toes and barely palpable pulses in feet. ECF No. 9, PageID.65 (citing ECF No. 9, PageID.1200). The ALJ explained that those findings prompted Dr. Nims to consider Dover's ability to operate foot controls as well as stand and walk without interruption. *Id.* The ALJ assessed the use of a hand-held assistive device because Dover said he

used one and had a slightly antalgic gait on examination.  *Id.*  And the ALJ noted Dr. Nims's assessment that Dover could stand for two hours, walk for two hours and sit for four hours with a sit/stand option.  *Id.*  The ALJ found that "[t]hese findings support limiting [Dover's] walking and standing to some degree."  *Id.*

But the ALJ also noted that Dover continued to drive a motor vehicle despite his impairments, had normal range of motion in his knees and ankles, had only a slight reduction in range of motion in his lumbar spine, could get on and off the examination table, and could stand on one leg independently.  *Id*. (citing ECF No. 9, PageID.508-515, 961, 1198-1202).  Noting Dover's roles as the primary caregiver for his aging parents and full-time childcare provider for his girlfriend's son, the ALJ declined to impose more restrictive exertional limits.  *Id.*, PageID.66.

The ALJ also found no reason to assess more manipulative restrictions.  Dover's "shoulders, elbows, and wrists were non-tender to palpation and examination of his hands revealed no muscle atrophy."  *Id.*, PageID.65 (citing ECF No. 9, PageID.676).  Dover had no more than limited conservative treatment for his herniated cervical disc, and EMG showed no cervical radiculopathy or evidence of carpel tunnel syndrome.  *Id.*, PageID.65 (citing ECF No. 9, PageID.623, 625, 1277-1282).  This

8

evidence substantially supports the ALJ's RFC without added restrictions. *See Smith*, 2013 WL 1150133, at *11.

More critically, even if failing to include Dr. Nims's push/pull restriction were error, it would not require remand. Remand is not required unless there is reason to believe that it might lead to a different result. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004). Here, the VE testified that Dover could do many jobs even if he were limited to sedentary rather than light work. ECF No. 9, PageID.108. Sedentary work does not generally require any pushing or pulling. SSR 96-9p, 1996 WL 374185, at *6 (1996). Thus, the ALJ's failure to adopt Dr. Nims's specific restrictions relating to pushing and pulling cannot create reversible error.

The VE's testimony about sedentary work also nullifies any potential error from the omission of Dr. Nims's restriction on stooping. Sedentary work requires no significant stooping. SSR 83-10, 1983 WL 31251, at *5 (1983). Remand is not appropriate.

## C.

Dover also argues that the ALJ made reversible error by improperly evaluating the opinions of his treating physicians, Dr. Merkler and Dr. Schreiber.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so; "these reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight*.*" *Gayheart v. Comm'r. of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)).

Dover does not challenge the substance of the ALJ's decision to afford the opinions of Dr. Merkler and Dr. Schreiber less than controlling weight. Instead, Dover argues that the ALJ violated the regulation requiring him to consider the six regulatory factors when determining the weight he gave to the opinions of his treating physicians. ECF No. 11, PageID.1364-1367; 20 C.F.R. § 404.1527(c)(2).

The Sixth Circuit recently rejected a similar argument that the ALJ failed to adequately consider the six factors under § 404.1527(c)(2). *Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020). The court reiterated an earlier ruling that an ALJ "need not perform an exhaustive, step-by-step analysis of each factor; he need only provide 'good reasons' for both his decision not to afford the physician's opinion controlling weight and for his ultimate opinion." *Id*. (quoting *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (internal marks omitted)). In *Rottmann*, the ALJ did not reference each regulatory factor, but discussed the marked inconsistency of the treating physicians' opinions with the record as whole, and that inconsistency was the most important factor of that case. *Id.* The court thus found no error. *Id.*

The same is true here. Although the ALJ did not reference all six regulatory factors in evaluating the opinions of Drs. Merkler and Schreiber,

11

he detailed the opinions' inconsistency with and lack of support from the respective treaters' own records and the record as a whole. ECF No. 9, PageID.65-66.

The ALJ gave Dr. Merkler's November 2018 opinions limited weight because they were not supported by physical examination findings, and were decidedly inconsistent with his earlier 2016 residual functional capacity statement.[2] ECF No. 9, PageID.63-64. For example, Dr. Merkler's 2018 statement limits Dover to reaching, handling, and fingering to only 10 percent of a workday. *Id.*, PageID.1265. In his 2016 RFC statement, Dr. Merkler noted no limitations with reaching, handling, or fingering for Dover. *Id.*, PageID.64 (citing ECF No. 9, PageID.775-776). But, on examination in 2018, Dover had no tenderness, redness, warmth, swelling, or atrophy in his hands. *Id.*, PageID.63 (citing ECF No. 9, PageID.1201). He could make fists and pick up coins with both hands without difficulty, and write with his dominant hand. *Id.* Dover's EMG showed no sign of carpel tunnel syndrome or cervical radiculopathy. *Id.*, PageID.65 (citing ECF No. 9, PageID.623, 625). He demonstrated only

---

[2] The ALJ also gave Dr. Merkler's 2016 statement limited weight for the same reasons applicable to the 2018 statement.

mildly decreased strength with a finger squeeze. *Id.*, PageID.63 (citing ECF No. 9, PageID.1201).

The ALJ found that Dr. Merkler's dramatic restrictions for walking, standing and sitting, all only five minutes at a time and no more than two hours in an eight-hour workday, were not supported by Dover's physical examinations. *Id.*, PageID.63. The ALJ noted a negative straight leg raise, the ability to stand on one leg at a time without difficulty, no evidence of hip joint tenderness, redness, warmth, swelling, or crepitus. *Id.* (citing ECF No. 9, PageID.1201). Examination findings demonstrated normal sensation and motor function. *Id.* (citing ECF No. 9, PageID.1201, 1282, 1287).

Dr. Merkler's cervical limitations of rarely being able to look up or down, or turn his head to the right or left were also unsupported by the medical findings. ECF No. 9, PageID.63. Physical examination showed no tenderness over the cervical spine or muscle spasms, and only mild disc herniation and neuroforminal stenosis at C6-C7 was noted on an MRI. *Id.*, PageID.63-64 (citing ECF No. 9, PageID.1201, 1282). An EMG showed no cervical radiculopathy. *Id.*, PageID.66 (citing ECF No. 9, PageID.625). Dr. Merkler's earlier opinion noted Dover could frequently look up, down, turn his head right or left, and hold his head in a static position. *Id.*, PageID.64 (citing ECF No. 9, PageID.776). Dr. Merkler's earlier opinion also said that

Dover could frequently lift 10 pounds and occasionally lift 20 pounds, and he provided no explanation in his 2018 opinion for increasing the restrictions to rarely lifting less than 10 pounds and never lifting 10 pounds or more.  *Id.*, PageID.63-64 (citing ECF No. 9, PageID.775, 1264). The ALJ noted that Dr. Merkler said in his 2016 opinion that Dover's limitations began thirty years earlier, but Dover worked during that period and Dr. Merkler did not begin treating Dover until 2014.  *Id.* (citing ECF No. 9, PageID.773, 776).

      The ALJ likewise gave the 2017 opinion of Dr. Schreiber, Dover's treating cardiologist, minimal weight because it was unsupported by physical examination findings, and the extreme limitations he assessed contradicted Dover's activities of daily living.  *Id.* PageID.66.  The ALJ discussed Dr. Schreiber's opinion that Dover could sit and stand no more than five minutes at a time, but needed to walk every fifteen minutes and could sit, stand or walk less than two hours in an eight-hour workday.  ECF No. 9, PageID.65 (citing ECF No. 9, PageID.1269-1270).   He noted that Dr. Schreiber did not require Dover to elevate his legs with prolonged sitting, or to use an assistive device for standing or walking.  *Id.* (citing ECF No. 9, PageID.1270).  Dr. Schreiber limited Dover to only rarely lifting less than 10 pounds, turning his head to the right or left or looking down.  *Id.*  He

opined that Dover could never look up, hold his head in a static position, reach, handle or finger.  *Id.*, PageID.65-66 (citing ECF No. 9, PageID.1270-1271).  The ALJ found Dr. Schreiber's neck, lifting and manipulative restrictions unsupported by physical examinations and MRI and EMG testing.  *Id.,* PageID.66. (citing ECF No. 9, PageID.623, 625, 1201, 1282).  He also determined that Dr. Schreiber's extreme exertional restrictions were inconsistent with Dover's ability to serve as primary caregiver to his aging parents and full-time childcare provider for his girlfriend's young son. *Id*.

The Court agrees with the ALJ's finding that the objective clinical and diagnostic medical evidence, as well as Dover's reported daily activities, undercut the extreme limitations described in the opinions of Dr. Merkler and Dr. Schreiber. The ALJ adequately explained good reason for giving minimal or limited weight to these opinions, and his decision thus should be affirmed.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 13] be **GRANTED**; that Dover's motion [ECF No. 11] be **DENIED**; and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Dated: May 27, 2021

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 27, 2021.

s/Marlena Williams  
MARLENA WILLIAMS  
Case Manager